UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARCO A. FREDA,
    Plaintiff,

    v.                                             CIVIL ACTION NO.
                                                   10-10978-MBB
MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,
    Defendant.

**MEMORANDUM AND ORDER RE:**
**PLAINTIFF'S MOTION FOR ORDER REVERSING THE DECISION OF THE**
**COMMISSIONER OR IN THE ALTERNATIVE, REMANDING THE CLAIM FOR A NEW**
**ADMINISTRATIVE HEARING (DOCKET ENTRY # 14); DEFENDANT'S CROSS-**
**MOTION FOR ORDER AFFIRMING THE DECISION OF THE COMMISSIONER**
**(DOCKET ENTRY # 16)**

**JUNE 14, 2011**


**BOWLER, U.S.M.J.**

Pending before this court are cross motions by the parties, plaintiff Marco A. Freda ("plaintiff") and defendant Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"). Plaintiff filed a motion to reverse the Commissioner's decision or, in the alternative, to remand the matter for a new administrative hearing, and to award costs and reasonable attorney's fees pursuant to 28 U.S.C. § 2412(d). (Docket Entry # 14). The Commissioner moves for an order affirming the denial of benefits. (Docket Entry # 16). On January 31, 2011, this court took the motions under advisement without a hearing.

<u>PROCEDURAL HISTORY</u>

On April 8, 2008, plaintiff filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") with the Social Security Administration ("SSA"), alleging disability since January 6, 1994.  (Tr. 158-173).  The claims were denied on July 2, 2008, and plaintiff filed a request for reconsideration.  (Tr. 71-76).  On November 20, 2008, the request for reconsideration was denied and plaintiff requested a hearing in front of an administrative law judge ("ALJ").  (Tr. 54-57).  On January 22, 2010, after a hearing in front of the ALJ, plaintiff's claims were again denied.  (Tr. 11-23).

In his decision, the ALJ found that plaintiff had a disability, but that substance abuse was a materially contributing factor.  (Tr. 15).  The ALJ further found that plaintiff was not disabled under the Social Security Act.  (Tr. 14-23).  After the ALJ issued his decision, the Decision Review Board selected plaintiff's claims for review.  (Tr. 11).  By April 26, 2010, however, the Review Board had not completed its review within the required 90 day time allotment, making the ALJ's decision final.  (Tr. 1 & 11).  On June 11, 2010, plaintiff petitioned this court for reversal or, in the alternative, remand pursuant to 42 U.S.C. § 405(g).  (Docket Entry # 1).

FACTUAL BACKGROUND

_____Plaintiff was 23 years old when his insured status expired in September of 2005 and 28 years old when the ALJ rendered him an unfavorable decision. (Tr. 33). Plaintiff attended high school through the eleventh grade, but never graduated or received a GED.[1] (Tr. 15 & 34). He worked at several different jobs, but never for more than a few months each. (Tr. 211).

The record indicates that plaintiff continuously sought medical treatment for a strong history of substance abuse. (Tr. 265-282 & 285-289). In 2007, plaintiff's driver's license was suspended due to drug charges.[2] (Tr. 323). Plaintiff was also arrested twice for carrying various prescription medications without accompanying documentation. (Tr. 325). At the time of plaintiff's application, he was supported by his parents, received welfare, food stamps and Emergency Aid to Elders, Disabled and Children benefits ("EAEDC") from the Commonwealth of Massachusetts. (Tr. 35 & 317).

A. Medical History

In December of 2004, plaintiff checked himself into Arbour Hospital ("Arbour") in Boston, Massachusetts seeking

---

[1] GED is an acronym for General Equivalency Diploma.

[2] plaintiff told the ALJ at his hearing that his license was currently suspended due to "parking tickets years in the past." (Tr. 34).

3

detoxification from a heroin addiction.  (Tr. 265).  Notes from
the hospital records indicate that plaintiff tested positive for
opiates and became easily agitated, demanding a full
detoxification from hospital staff.  (Tr. 266).  Specifically, a
December 28, 2004 progress report noted, "Patient continues to
seek narcotics/subutex for detox."[3]  (Tr. 278).  Notes from
plaintiff's visit to Arbour also indicate that he "shot up two
grams of heroin" two days prior, one day after being released
from a different hospital for heroin detoxification.  (Tr. 270).
Clinically listed disorders were recorded as mood disorder and
opioid dependence.  (Tr. 278).

On June 9, 2005, plaintiff checked into the Bournewood
Hospital ("Bournewood") in Brookline, Massachusetts per the
recommendation of the Boston Medical Center.  (Tr. 288).  Intake
notes suggest that plaintiff visited the hospital over 40 times
for "detox" and that he suffered from a long history of opiate
dependence.  (Tr. 288).  Plaintiff reported abusing heroin on the
day of his last discharge and claimed he used about 20 bags of IV
heroin daily.  (Tr. 288).  Although plaintiff reported a history
of anxiety, he had no previous psychiatric hospitalizations or
psychiatric treatment.  (Tr. 288).

_____

[3]  Subutex (Buprenorphine) is used to treat opiate
withdrawal symptoms by producing similar effects to heroine or
other opioid drugs.  See
http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000285/.

Plaintiff again checked into Bournewood for a heroin detoxification on July 31, 2005. (Tr. 285). He chiefly complained of a heroin relapse. (Tr. 285). The hospital admitted him for opiate "detox," as well as a benzodiazepine detox since he reportedly used both substances earlier that day. (Tr. 285). Notes from the visit indicate that plaintiff was not a reliable historian and that he had a record of "50-plus detoxes." (Tr. 285). Plaintiff was sober for a three month stint in 2003, but had not been sober since. (Tr. 285). The record further indicates that plaintiff struggled with alcohol abuse since the age of 14 and used heroin since 16 or 18 years of age. (Tr. 285). Plaintiff's diagnoses at the time of discharge included opiate and alcohol dependence, benzodiazepine dependence, mood disorder and an extensive history of substance abuse with little sober time. (Tr. 286-287).

On August 15, 2007, plaintiff saw Dr. David Shumway ("Dr. Shumway"), a psychiatrist with the Psychiatric Group of the North Shore. (Tr. 304 & 317). During his initial interview, plaintiff told Dr. Shumway that he had been hospitalized at Bournewood for anxiety and depression and that he had not been able to work since 2002 or 2003 due to anxiety. (Tr. 317). Plaintiff also reported having no legal problems and no issues with drugs. (Tr. 317-318). In regard to plaintiff's anxiety, Dr. Shumway noted that plaintiff "was shy and insecure about talking about social

5

phobia, thinking he was paranoid." (Tr. 319). Plaintiff reported having trouble with public conveyances and bridges and tunnels. Dr. Shumway diagnosed plaintiff with major depression, panic with agoraphobia, social phobia and generalized anxiety. (Tr. 319). Dr. Shumway further noted that plaintiff was "shy, insecure with a vast amount of self-doubt." Dr. Shumway prescribed Celexa and Klonopin. (Tr. 319).

Plaintiff next saw Dr. Shumway on September 11. Dr. Shumway noted, "The patient seems not to be above manipulating in order to get early refills on his benzos." (Tr. 316). Dr. Shumway indicated that plaintiff telephoned to get more benzodiazepines and attempted to move the prescription from one pharmacy to another in order to get early refills. (Tr. 316). When confronted, plaintiff alleged that he needed the medication so that he could go on a vacation with his friends. (Tr. 316). Plaintiff reported doing better with medication and asked about the possibility of increasing Celexa. Dr. Shumway increased the dosage of Celexa and maintained plaintiff's dosage of Klonopin. (Tr. 316).

On October 9, plaintiff reported less sadness, anxiety, frustration and anger, but complained of having trouble going to sleep and staying asleep. (Tr. 315). Plaintiff also complained of a racing mind. (Tr. 315). Dr. Shumway decreased plaintiff's Celexa dosage and added Wellbutrin and Seroquel. (Tr. 315).

Plaintiff visited Dr. Shumway again on November 29.  Dr. Shumway noted:

> The patient seems to not be above manipulating in order to get early refills on his benzos.  He is a definite benzo-seeker.  He will lie to get extra medication without concern for the relationship with his doctor.
>
> This man is a real wheeler/dealer.  He wants more benzodiazepines.  He wants to pretend to switch pharmacies so he can get new prescriptions early.  He wants to drop by with his Medicaid papers in order to get them filled out without an appointment.
>
> The degree to which all of this is sociopathy or narcissism remains a question.  He certainly is a man on the make.
>
> I predict this man is probably not going to be long for this clinic.

(Tr. 314).  Dr. Shumway discontinued plaintiff's Celexa and increased his Wellbutrin dosage.  (Tr. 314).

On January 3, 2008, Dr. Shumway noted that plaintiff called to cancel an appointment for December 27, 2007, and left a slurred voice message.  (Tr. 313).  Again, Dr. Shumway commented on plaintiff's affinity for benzodiazepines, stating:

> this is a man who likes his benzodiazepines and seems to be a wheeler and dealer.  He pretends to switch pharmacies so he can get new prescriptions early.  He essentially lied to me.  The degree to which he is a pill-seeker seems less and less a question.

(Tr. 313).  Dr. Shumway reduced plaintiff's Klonopin dosage and noted, "One months med and no refill."  (Tr. 313).

Notes from February 5, 2008, indicate that plaintiff was not happy about his reduced dosage of Klonopin.  (Tr. 312).  Dr. Shumway noted, "I have the strong feeling that we are dancing

around the real issue. . . .  The real issue is that he wants
more Klonopin and I am reducing it."  (Tr. 312).  Dr. Shumway
concluded his notes by expressing his surprise that plaintiff
kept returning for visits "when it [was] clear what his
motivation [was]."  (Tr. 312).  He discontinued Seroquel and
started plaintiff on Clonidine.  (Tr. 312).

Plaintiff again visited Dr. Shumway on March 4.  (Tr. 311).
He indicated that he had to go to his girlfriend's mother's
funeral and that he was nervous about that.  (Tr. 311).  He also
told Dr. Shumway that he was still very anxious, but that the
Clonidine helped him sleep.  (Tr. 311).  Dr. Shumway noted that
it was clear that plaintiff was still craving benzodiazepines.
(Tr. 311).

On April 1, plaintiff reported that he was hoping to get a
job at a drive-through oil change store and was doing relatively
well, getting along with people and sleeping.  (Tr. 310).  He
then visited Dr. Shumway on April 4, however, and reported
difficulty in maintaining jobs.  Plaintiff revealed that he
detoxified from Oxycontin five years prior but did not mention
heroin or benzodiazepines.  (Tr. 309).  Plaintiff reported that
his current medications helped him significantly with his ability
to take public transportation and that he could keep his head up
and look out the windows.  Dr. Shumway kept plaintiff on
Wellbutrin, Clonidine and Klonopin.  (Tr. 309).

On May 27, plaintiff told Dr. Shumway that he was not looking for work, but was planning to collect Social Security benefits. (Tr. 307). He alleged that he "couldn't deal with people" when asked why he thought he couldn't work. Dr. Shumway noted that plaintiff missed two prior appointments and that he changed the subject when asked why. (Tr. 307). Further, Dr. Shumway contemplated, "The degree to which this is a man who is looking for a disability or truly disabled always remains a question." (Tr. 307).

On June 26, plaintiff reported that he was helping his grandfather do yard work three to four times a week and that the work helped plaintiff's condition. (Tr. 306). Shumway noted that plaintiff was off probation, but that he was still seeking more Klonopin.[4] (Tr. 306). Plaintiff was upset that Dr. Shumway reduced his Klonopin dosage. (Tr. 306).

Plaintiff's last appointment on record was July 29, 2008. (Tr. 305). Dr. Shumway's office note describes plaintiff as "overwhelmingly agoraphobic and medication-seeking." The note also lists plaintiff as having last worked in 2003 and having "detoxed" from Oxycontin abuse in 2003. (Tr. 305). Plaintiff reported the denial of his SSI application and told Dr. Shumway

---

[4] Dr. Shumway's notes first mention plaintiff's probation on May 27, 2008. (Tr. 307). He referenced the matter by stating, "The patient is getting off probation tomorrow." (Tr. 307). The topic was not discussed further.

that he was not looking for work.  (Tr. 305).  Additionally, plaintiff reported that he last worked eight years ago.  (Tr. 305).  Dr. Shumway noted that plaintiff previously claimed that it had only been five years since he worked.  (Tr. 305).  Dr. Shumway increased plaintiff's dosage of Clonidine.  (Tr. 305).

On August 14, 2009, Dr. Shumway completed an EAEDC[5] report to determine whether plaintiff met the definition of impairment under Massachusetts law.  (Tr. 362).  The report indicated that plaintiff had an impairment affecting his ability to work which would last one or more years.[6]  (Tr. 362).

On November 20, 2009, Habit OPCO, Inc. ("Habit"), an outpatient clinic for persons with addictive behaviors, reported that plaintiff had been in the clinic's care since January 1, 2007.  (Tr. 388).  The report indicates that plaintiff received a methadone dosage as part of a maintenance program since the 2007 Habit admission date.  (Tr. 388).  The report also includes results from drug tests administered to plaintiff from January 30, 2007 to November 19, 2009.  (Tr. 389-390).  The results show

---

[5]  As previously mentioned, EAEDC is an acronym for Emergency Aid to Elders, Disabled and Children.

[6]  The Massachusetts Department of Transitional Assistance ("DTA") considers an EAEDC applicant disabled if there is supporting written notice from the SSA or an ALJ stating that the applicant is eligible for SSI or SSDI benefits, or if the DTA agrees with an applicant's examining doctor's report.  106 C.M.R. § 320.200(A)(1).

that plaintiff tested positive for substances a majority of the time and missed or refused to take tests on many occasions.[7] (Tr. 389-390).

On July 2, 2008, Dr. Sue Conley ("Dr. Conley"), a board certified psychiatrist, reviewed plaintiff's psychiatric record. (Tr. 18 & 290-303). Dr. Conley determined that there was insufficient evidence presented to establish the existence of plaintiff's alleged impairments. (Tr. 302). Guiding Dr. Conley's decision was plaintiff's history of credibility issues and drug seeking behavior. (Tr. 302).

Dr. Russell Phillips ("Dr. Phillips"), also a board certified psychiatrist, reviewed plaintiff's psychiatric history as well as Dr. Conley's findings. (Tr. 18 & 357). On November 15, 2008, Dr. Phillips, in accord with Dr. Conley, found the evidence insufficient to establish a bona fide mental impairment. (Tr. 357). Specifically, Dr. Phillips referenced plaintiff's lack of credibility and opined that this lack of credibility "prevent[ed] an accurate assessment of potential impairment severity." (Tr. 357).

B.  Work History

---

[7] These test results, or lack thereof, are listed as "unable to obtain." (Tr. 389-390). Others are listed as "awaiting results," with no results subsequently reported. (Tr. 389-390). Plaintiff's longest period of negative results occurred from February 3 to June 12, 2009. (Tr. 390). Furthermore, tests positive for only methadone were classified as negative. (Tr. 389-390).

Plaintiff's work history is uncontested. It spans the period from 1998 to 2005 and is generally unsubstantial. (Tr. 175-179 & 211). An undated disability work history report indicates that plaintiff was employed as an ice cream server in 1998, a customer service representative and a grocery bagger in 2000, a produce stocker in 2002, a shipping/receiving stocker in 2003, and a forklift driver in 2004.[8] (Tr. 211). Plaintiff's longest period of employment was held as a shipping/receiving stocker, a position which he held for four months. (Tr. 211). Plaintiff's combined earnings from 1998 to 2005 were minimal. (Tr. 175-179).

C. CDI Investigation

The Cooperative Disability Investigations Unit ("CDI") conducted an investigative report. (Tr. 320-356). The report found, inter alia, that plaintiff functioned in a minimally impaired manner. (Tr. 322). The CDI took video surveillance of plaintiff's day to day activities and interviewed persons familiar with his abilities. (Tr. 322). The CDI also reviewed plaintiff's medical records, noting plaintiff's drug use and unreliable memory. (Tr. 323). Contrary to plaintiff's claims of disability, the CDI report ultimately found plaintiff minimally

---

[8] Plaintiff's work history report shows that plaintiff's last job ended in 2004 (Tr. 211), but plaintiff reported to the ALJ that the year could have been 2005. (Tr. 35). The date which plaintiff last worked, however, was irrelevant to the ALJ's finding and is irrelevant to this court's review.

impaired.  (Tr. 322).

D.  <u>The ALJ's Findings of Fact and Rulings of Law</u>

     At plaintiff's hearing on November 19, 2009, the ALJ heard testimony from plaintiff and received further information from plaintiff's counsel.  (Tr. 26-45).  Judy Freda, plaintiff's mother, was also present.  (Tr. 24).  Plaintiff testified that his driver's license was suspended because of parking tickets and that he was last employed in 2005.[9]  (Tr. 34-35).  Plaintiff also testified that he had been clean of drugs for two and a half to three years and that he was currently on methadone.  (Tr. 38-39). Finally, plaintiff told the ALJ that he spent half the day lying down, that he became very nervous on public transportation and that he smoked around a pack of cigarettes a day.  (Tr. 41-42).

     After a review of the record, the ALJ applied the applicable five step analysis and found that plaintiff had a disability, but that his substance abuse was a contributing factor material to the determination of the disability.  (Tr. 15); <u>see</u> 20 C.F.R. §§ 404.1520 & 416.920.  At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity at any time relevant to his decision.  (Tr. 17).  At step two, the ALJ determined that plaintiff had polysubstance dependence, a severe impairment.  (Tr. 17).  At step three, the ALJ found that

---

     [9]  As previously mentioned, the CDI investigation reported that plaintiff's license "was suspended on 12/07/07 for one year for drug offenses."  (Tr. 323).

13

plaintiff's polysubstance dependence, combined with his other impairments, did not meet or medically equal one of the listed impairments in Appendix 1, Part 404, Subpart P of the Code of Federal Regulations. (Tr. 18). At step four, the ALJ found that plaintiff had the residual functional capacity ("RFC") to perform a full range or work, but that he could not sustain work related activities on a regular and continuing basis. (Tr. 18). At step five, the ALJ, considering plaintiff's age, education, work experience and residual functional capacity based on his impairments, found that there were no jobs in significant numbers that plaintiff could perform. (Tr. 19). Finally, the ALJ found that if plaintiff stopped the substance use, his remaining limitations would not cause more than a minimal impact on his ability to work. (Tr. 20-23). Accordingly, the ALJ did not find plaintiff disabled within the meaning of the Social Security Act. (Tr. 23).

## Discussion

A. <u>Jurisdiction and Standard of Review</u>

The Social Security Act provides for review of a denial of disability benefits. 42 U.S.C. § 405(g). Having obtained a final decision by the Commissioner, plaintiff filed this action on June 11, 2010. (Docket Entry # 1). This court has the power to affirm, modify or reverse the ALJ's decision with or without

remanding the case for a rehearing. Id. The ALJ must make a
determination in accord with substantial evidence. Id.
Accordingly, an ALJ's findings of fact are conclusive if
supported by substantial evidence. Id.; Richardson v. Perales,
402 U.S. 389, 390 (1971); Manso-Pizarro v. Secretary of Health
and Human Services, 76 F.3d 15, 16 (1st Cir. 1996). The province
of this court is to determine "whether the final decision is
supported by substantial evidence and whether the correct legal
standard was used." Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir.
2001).

Substantial evidence is more than a scintilla of evidence
that a reasonable person could find sufficient to support the
result. Musto v. Halter, 135 F. Supp.2d 220, 225 (D.Mass. 2001)
(citing Rodriguez v. Secretary of Health and Human Services, 647
F.2d 218, 222 (1st Cir. 1981)). "Even if the record could
arguably support a different result," this court must affirm the
ALJ's conclusion if supported by substantial evidence. Rodriguez
Pagan v. Secretary of Health and Human Services, 819 F.2d 1, 3
(1st Cir. 1987). A remand is appropriate when "further evidence
is necessary to develop the facts of the case fully . . . and
consideration of it is essential to a fair hearing." Delgado v.
Secretary of Health and Human Services, 43 F.3d 1456 (1st Cir.
1994).

B.  Disability Determination

The ultimate question is whether plaintiff is disabled within the meaning of 42 U.S.C. § 423(d)(1)(A) and, if so, whether his substance use is a contributing factor material to his disability determination. 20 C.F.R. § 404.1535. The Social Security Act defines a disability as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The impairment must be of such severity that the claimant "'is not only unable to do his previous work but, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy.'" Deblois v. Secretary of Health and Human Services, 686 F.2d 76, 79 (1st Cir. 1982) (quoting 42 U.S.C. § 423(d)(2)(A)).

To determine whether a claimant is disabled, the SSA uses a five step evaluation process. 20 C.F.R. §§ 404.1520 & 416.920. Under the first step, if a claimant is employed, he is not disabled. Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 6 (1st Cir. 1982). If the claimant is not engaged in substantial gainful activity, the Commissioner moves to the next step.

At step two, the Commissioner evaluates whether the claimant has a severe impairment, one that "significantly limits [a

claimant's] physical ability to do basic work activities." Id.;
20 C.F.R. §§ 404.1509 & 1520(c). If the claimant has a severe
impairment, the analysis proceeds to the third step.

At step three, the Commissioner determines whether the
claimant's impairments meet or equal any of the impairments
listed in Appendix 1, Part 404, Subpart P of the Code of Federal
Regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant
has a listed impairment or the equivalent, then he or she is
disabled. Goodermote, 690 F.2d at 6. If not, the Commissioner
proceeds to the fourth step to determine whether the claimant has
the residual functional capacity to perform his past work. 20
C.F.R. § 404.1520(e).

If a claimant is unable to perform past relevant work, the
Commissioner proceeds to the fifth and final step to determine
whether claimant's RFC, age, education and work experience
suggest that he could perform another job in the national
economy. 20 C.F.R. § 404.1520(a)(4)(v).

Substance abuse, however, may disqualify a claimant if the
abuse is material to the determination of a disability. Pub. L.
No. 104-121 § 105(a)(1). Section 105 provides:

> An individual shall not be considered to be disabled for
> purposes of this title if alcoholism or drug addiction would
> be a contributing factor material to the Commissioner's
> determination that the individual is disabled.

Pub. L. No. 104-121 § 105(a)(1); see also Pub. L. No. 104-121 §
105(b)(1); 20 C.F.R. § 404.1535(b).

17

1.  <u>Substantial Evidence of Substance Abuse Supports the ALJ's</u>
<u>Decision</u>

        Plaintiff claims that the ALJ's decision is not supported by
substantial evidence.  (Docket Entry # 15).  The ALJ found that
plaintiff had a disability, but that he would not be disabled if
he discontinued his substance abuse.  (Tr. 23).  His decision was
supported by substantial evidence gleaned from the record.
Substantial evidence is such evidence as a reasonable mind might
accept as adequate to support a conclusion.  <u>Richardson v.</u>
<u>Perales</u>, 402 U.S. 389, 90 (1971).

        Although not explicitly contested, the ALJ properly applied
the five step evaluation process after a thorough review of the
record.[10]  (Tr. 17-23).  In applying this evaluation, he looked
to plaintiff's history of substance abuse, his testimony at the
hearing, psychological records from Dr. Shumway, the CDI
investigation report and reports from Drs. Conley and Phillips.
(Tr. 17-23).  Specifically, the ALJ noted plaintiff's history of
abuse of opiates, alcohol and benzodiazepine.  (Tr. 17).  He
further noted plaintiff's relationship with Dr. Shumway and found
that plaintiff's diagnoses of major depression, panic with
agoraphobia, social phobia and generalized anxiety were

---

        [10]  Plaintiff does not allege that the ALJ erred in the five
step evaluation, but contests his determination that plaintiff
would not be disabled but for his substance abuse.  (Docket Entry
# 15, pp. 8-10).

questionable because they were based on plaintiff's omissions and misrepresentations of his drug use.  (Tr. 17-23).

First and foremost, plaintiff's 2005 Bournewood records substantiate the ALJ's decision.  The records indicate that plaintiff detoxified from heroin and benzodiazepines over 50 times and that he used about a gram of heroin per day in 2005.[11] (Tr. 342).  Plaintiff's insured status expired in September 2005. (Tr. 33).  He was released from Bournewood one month earlier after detoxifying from opiate and benzodiazepine abuse.  (Tr. 342).  Additionally, the Habit records, dated from January 30, 2007 to November 19, 2009, show more positive drug test results than negative.[12]  (Tr. 389-390).  The records also indicate that plaintiff maintained a methadone regimen as a Habit patient. (Tr. 388).  Because the record shows consistent drug use throughout plaintiff's disability application period, the ALJ properly determined that plaintiff's substance abuse was a contributing factor to the determination of his disability.

Dr. Shumway's notes also shed light onto plaintiff's drug seeking behavior and support the ALJ's decision.  (Tr. 305-319). The medical opinion of a treating source is entitled to

---

[11]  Plaintiff had only three months of sobriety between 2003 and 2005.  (Tr. 342).

[12]  The records indicate 24 positive results and 20 negative results, with 14 dates listed as "unable to obtain."  (Tr. 389-390).

controlling weight when it is "well supported by medically acceptable clinical and laboratory diagnosis techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2). "If the opinion is inconsistent, however, either internally or with other evidence, the [ALJ] is free to 'downplay' the physician's assessment." Rodriquez v. Astrue, 694 F.Supp.2d 36, 42 (D.Mass. 2010).

In his appeal to this court, plaintiff opines that the ALJ erred by "call[ing] into question" Dr. Shumway's opinions because Dr. Shumway knew about plaintiff's substance abuse problems. (Docket Entry # 15, p. 7). This argument is misguided and wholly unsupported by the record.

In his first interview, plaintiff told Dr. Shumway that he was previously hospitalized at Bournewood for anxiety and depression. (Tr. 317). He failed to mention, however, his "50-plus" heroin and benzodiazepine detoxifications. (Tr. 317-319). Three months later, Dr. Shumway described plaintiff as a "definite benzo-seeker," noting that he would lie to get extra medication. (Tr. 314). Dr. Shumway further described plaintiff as "a real wheeler/dealer," wanting more benzodiazepines. (Tr. 314). Dr. Shumway's May 27, 2008 notes indicate that plaintiff had not worked since 2003 and abused Oxycontin in 2003. (Tr. 307). There was no mention of heroin or benzodiazepines, but Dr. Shumway noted, "The degree to which this is a man who is looking

for a disability or truly disabled always remains a question."
(Tr. 307).  Dr. Shumway's notes indicate a level of distrust of
plaintiff's motives and sincerity, not acknowledgment of
plaintiff's opiate and benzodiazepine abuse.  Accordingly, the
ALJ gave Dr. Shumway's opinions lesser weight because they were
internally inconsistent and inconsistent with other substantial
evidence of plaintiff's substance abuse.  See 20 C.F.R. §
416.927(d)(2); Rodriguez 694 F.Supp.2d at 42; Rodriguez v.
Secretary of Health and Human Services, 647 F.2d 218, 222 (1st
Cir. 1981) (it is the Secretary's responsibility to determine
issues of credibility and to draw inferences from the record
evidence).

The CDI investigation report additionally supports the ALJ's
conclusion.  Specifically, CDI investigators followed plaintiff
through the Faneuil Hall area of Boston and observed him casually
window shopping and eating with an unidentified female.  (Tr.
323-324).  Investigators also observed plaintiff taking public
transportation and walking in public without signs of distress.
(Tr. 324).  This evidence proved contrary to plaintiff's
disability claims and supported the ALJ's findings.

Finally, reports from Drs. Conley and Phillips, the
reviewing doctors, support the ALJ's findings.  Both doctors
reviewed plaintiff's psychiatric record and found it insufficient
to establish plaintiff's alleged impairments.  (Tr. 290 & 357).

Simply put, plaintiff's credibility and history of polysubstance abuse prevented accurate assessment. (Tr. 302, 357). Accordingly, although not plaintiff's primary physicians, Drs. Conley and Phillips and their reports are in accord with other evidence and support the ALJ's decision. See Gordils v. Secretary of Health and Human Services, 921 F.2d 327 (1ˢᵗ Cir. 1990) (report of non-examining, non testifying physician cannot provide substantial evidence on its own, but may be substantial when coupled with other evidence in the record).

In sum, the ALJ relied on substantial evidence found in the record to determine that plaintiff would not be disabled but for his polysubstance abuse.

2. Plaintiff's Record was Fully Developed and the ALJ was Not Required to Recontact Plaintiff's Physician

Plaintiff claims that the ALJ failed to recontact Dr. Shumway in order to fully develop the record. (Docket # 15, pp. 3-8). Specifically, he maintains that 20 C.F.R. §§ 404.1512(e) and 416.912(e) require additional evidence or clarification when a physician's report is inadequate to determine whether a disability exists. (Docket # 15, pp. 4-5).

20 C.F.R. §§ 404.1512(e) and 416.912(e) provide:

When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or decision . . ..

We will seek additional evidence or clarification from your

medical source when the report from your medical source
    contains a conflict or ambiguity that must be resolved . .
    ..

20 C.F.R. § 404.1512(e).  These sections also note that

additional evidence will not be sought if, having knowledge from

previous experience, "the source either cannot or will not

provide the necessary findings."  20 C.F.R. § 404.1512(e)(2).

This court has the full records of Dr. Shumway.  These records

are not in conflict or ambiguous, they simply do not address

plaintiff's heroin use because plaintiff did not inform Dr.

Shumway of it.  Hence, returning to query Dr. Shumway about a

substance abuse he did not know about "will not provide the

necessary findings."  See 20 C.F.R. § 404.1512(e)(2).

    Moreover, plaintiff has the burden of producing the evidence

and proving his impairment.  20 C.F.R. § 416.912.  He also has

the burden of proving that his substance abuse was not a

contributing factor material to his disability determination.

Ball v. Massanari, 254 F.3d 817, 822-23 (9th Cir. 2001); Brown v.

Apfel, 192 F.3d 492 (5th Cir. 1999).

    Primarily, plaintiff failed to prove that his substance

abuse was not a contributing factor to the determination of his

disability.[13]  It is clear from the record that the ALJ relied on

plaintiff's substance abuse and the lack or credibility of his

_____

    13 Plaintiff was represented by counsel throughout the
application process and appeal.  (Docket Entry # 15; Tr. 26).

23

representations to Dr. Shumway.  In his decision, the ALJ noted
that plaintiff did not reveal the full extent of his substance
abuse to Dr. Shumway.  Consequently, the ALJ discredited Dr.
Shumway's diagnoses.  (Tr. 18).  Although 20 C.F.R. §§
404.1512(e) and 416.912(e) require an ALJ to fully develop a
claimant's record, an ALJ cannot take the place of a claimant.
Stated another way, the ALJ could not have retroactively ordered
plaintiff to tell Dr. Shumway about his substance abuse.  Indeed,
it was up to plaintiff to disclose this information to Dr.
Shumway during his monthly confidential counseling sessions.  See
generally Ball, 254 F.3d at 822.

Furthermore, Dr. Shumway's records, which indicate
plaintiff's lack of credibility, provide adequate support for the
ALJ's determination that plaintiff was not disabled but for his
substance abuse.  Dr. Shumway constantly questioned plaintiff's
truthfulness, writing on May 27, 2008, "the degree to which this
is a man who is looking for a disability or truly disabled always
remains a question."[14]  (Tr. 307).  Indeed, Dr. Shumway's records
also support the ALJ's determination that plaintiff lacked
credibility.  The CDI report and the reports of Drs. Conley and
Phillips also support Dr. Shumway's suspicions.  As both Drs.
Conley and Phillips found plaintiff's evidence insufficient to

_____

[14]  The record indicates that the ALJ may have had to order
the production of Dr. Shumway's notes in order to help develop
plaintiff's claim.  (Tr. 43).

support a disability determination (Tr. 302 & 357) and as the CDI report found that plaintiff acted in contrast to his disability claims (Tr. 320-356), the ALJ did not need to recontact Dr. Shumway for further development of the record. All sources in the record pointed to plaintiff's lack of credibility as well as his substance abuse. <u>See Lowe v. Apfel</u>, 226 F.3d 969, 972 (8th Cir. 2000) ("where adequately explained and supported, credibility findings are for the ALJ to make"). Dr. Shumway noted plaintiff's propensity to seek benzodiazepine above and beyond the prescribed amount. (Tr. 313). Additionally, although Dr. Shumway did not know of plaintiff's heroin abuse, the Bournewood records provide ample support for plaintiff's substance dependency. (Tr. 285-287). The record as a whole supports in a consistent manner plaintiff's lack of credibility and his repeated, prolonged substance abuse.


## CONCLUSION

In accordance with the foregoing discussion, plaintiff's motion for an order reversing the decision of the Commissioner or, in the alternative, remanding the claim for a new administrative hearing (Docket Entry # 14) is **DENIED** and the Commissioner's motion for an order affirming the decision of the Commissioner (Docket Entry # 16) is **ALLOWED.**

A final judgement shall issue in accord with this opinion.

       /s/  Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge